# SUPREME COURT.

## J. D. DUDLEY and others agt. J. Z. GOODRICH and others.

Where an undertaking was given on discharging an attachment against a non-resident defendant; and subsequently the plaintiff moved for other sureties, on the ground that one of them was insolvent,

*Held*, that the court had no power to order additional sureties in such a case.

*At Chambers, New - York, July,* 1858.

THE plaintiffs are merchants of this city, and the defendants large manufacturers in Massachusetts. To satisfy an alleged claim, the plaintiffs attached property of the defendants, which was released upon filing the usual undertaking. Subsequently the defendants' sureties became insolvent, whereupon the plaintiffs moved that new security be given.

WOODBURY & CHURCHILL, *for plaintiffs*, argued the following points :

I. The court may require the defendants to give new sureties, on the fact being made to appear that either one or both of the defendants' sureties has become insolvent. (*Willett* agt. *Stringer*, 15 *How. Pr. R.* 310 ; *Bridges* agt. *Canfield*, 2 *Edwd. Ch. R.* 208.)

*The Hartford Quarry Co.* agt. *Pendleton*, (4 *Abb.* 460,) is not in point. The plaintiffs there, being a foreign corporation, were obliged to file security for costs, in order to acquire the right to maintain the action. Having done so, it was properly held that they could not lose their status in court, for the reason that their sureties had become insolvent. *Bridges* agt. *Canfield*, was an ordinary case where security for costs had been given, and the plaintiffs were required to give new sureties, the former sureties having become insolvent.

II. The insolvency of either surety is sufficient to enable the plaintiffs to succeed on the motion. Here both are virtually insolvent. The true test whether or not a new surety should be required, is, could the surety to whom objection is now

made, justify as such if now offered for the first time? The plaintiffs have a right to be placed in the position which they occupied when the action was commenced, and this continues down to the entry of judgment.

III. There are no laches on the part of the plaintiffs. It does not appear that the plaintiffs knew of the insolvency until very recently. The laches of plaintiffs, if any exist, work no injury to defendants. The progress of the action is not affected in any way.

IV. The responsibility of defendants is no answer to the motion. They are non-residents, show no property within this state, and the plaintiffs in the event of success in the action, would be compelled to collect their judgment by an action thereon in another state, and through a foreign tribunal. The court will not put them to this trouble.

W. J. A. FULLER, *for defendants*, argued on these points:

I. There is no provision made by statute or by rule of court, to compel the defendants to substitute new sureties where the first have become insolvent; and the court has not the power to make such an order independent of statutes. (*The Hartford Quarry Co.* agt. *Pendleton*, 4 *Abbott*, 460.) That case is analogous to the present one. There a foreign corporation obtained the right to sue by filing the proper undertaking, and that right was not affected by the subsequent insolvency of the sureties. Here the defendants obtained a release of the attachment against the property of non-residents by filing the proper undertaking, and by a parity of reasoning, they too, can be in no way affected by the subsequent insolvency of the sureties. The cases cited by the plaintiff's counsel are not at all in point, except that *Willett* agt. *Stringer*, (15 *How*. 310,) establishes the principle that when upon an appeal an undertaking is perfected, the appellant does not remain responsible for the insolvency of his sureties; and so far it sustains the theory of the defendants in this action.

II. The question here raised is new and important, never having been judicially determined, and should be decided upon

Dudley and others agt. Goodrich and others.

first principles. The original object of an attachment against the property of a non-resident debtor, was merely to secure the appearance of the party, that the court might obtain jurisdiction, and was not to secure the alleged debt. It is true that the design of the Code was to secure the debt as well as to obtain jurisdiction, probably upon the presumption that a resident judgment debtor would be here to answer with his property, and it does not provide for the release of the property attached upon appearance in the action, except upon giving an undertaking; but in other states, everywhere where the common rule obtains, as soon as there is an appearance, there is an end of the attachment. The Code thus gives advantage enough to resident suitors, without calling upon the court for further aid in a proceeding like this, for which there is no law, no rule, no warrant, no reason, no precedent.

III. If the preceding positions be untenable, and the court should hold that it has the power to order new security, it then becomes a question of judicial discretion in each instance, and the facts of this case are such that the motion, on its own merits, should be denied. [This proposition was argued at length, but is omitted here, as the question was not decided upon its merits, but upon the abstract principle of law involved.]

INGRAHAM, Justice. The undertaking in this case was given on discharging an attachment against a non-resident defendant. The plaintiff moves for other sureties, on the ground that one of them is insolvent.

It appears to me that this is one of those cases in which the court has no power to order additional sureties. The property has been discharged from the attachment in the mode pointed out by statute. There is no power to issue another attachment, and the court has no control over the property attached.

The reasons stated by me in *The Hartford Quarry Co.* agt. *Pendleton*, (4 *Abbott*, 460,) are applicable to this case.

The same reasons are stated by Mr. Justice HOFFMAN, in *Willett* agt. *Stringer*, (15 *How*. 310,) as to undertaking on appeals.

Motion denied, defendants' costs to abide event.